**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SIERRACIN CORPORATION, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No.  02-1343-MLB |
| ) | |
| LEE AEROSPACE, INC., JAMES E. ) | |
| LEE and ROBERT HART, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

The Sierracin Corporation filed suit against Lee Aerospace, Inc. (LAI), James E. Lee and Robert Hart, alleging, among other things, various breaches of contractual and fiduciary duties, unfair competition, and conspiracy (Doc. 48).  This case is currently before the court upon defendants' motion for partial summary judgment. (Doc. 138).  The motion has been fully briefed and is ripe for decision. (Docs. 139, 144, 145).  For the following reasons, defendants' motion is granted.

**II.   FACTS**

Sierracin Corporation (Sierracin) entered into an agreement with Lee Aerospace, Inc. (LAI) in May 1990.  This agreement was terminated in February 1999.[1]  The agreement required LAI to manufacture a transparency (the outer pane of an aircraft window assembly) that was designed by Sierracin.  The transparency bore the appropriate Sierracin part number and was incorporated into the window assembly,

---

[1] Neither party has offered the agreement into evidence.

which had a separate LAI part number. The completed window assemblies were manufactured for Cessna, in accordance with Cessna's specifications. At some earlier point, Sierracin entered into a sole-source contract with Cessna to provide 100% of the transparencies for certain Cessna aircraft.[2]  (Docs. 139 at 3-5; 144 at 4, 7). In compliance with the sole-source contract, Cessna submitted a purchase order to Sierracin. Sierracin then submitted a purchase order to LAI. LAI manufactured the Sierracin transparency and incorporated it into the entire window assembly according to Cessna's specifications and Sierracin's design.

On February 7, 1997, Cessna informed Sierracin that it was cancelling the purchase orders for the transparencies and that all further orders would be directly submitted to LAI. (Doc. 144, exh. Q). On February 20, 1997, Sierracin replied that it agreed to the revised procedure and that the "Sierracin" windows could be purchased directly from LAI. Sierracin noted that the windows were its design. Id. Thereafter, Cessna submitted all orders to LAI. On May, 16, 2000, Sierracin wrote Cessna that it had no record of any Cessna purchase orders for the transparencies since February 1997.

Defendants have filed a motion for partial summary judgment on Sierracin's claims for violation of the Lanham Act, unfair competition and civil conspiracy.

### III. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows] that there is no

---

[2] The sole-source contract has not been entered into evidence.

-2-

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**IV. ANALYSIS**

**A. Lanham Act Violation**

Sierracin's fourth claim is for an alleged violation of the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1051 et seq. As a general matter, the Act makes "actionable the deceptive and misleading use of marks," and "protect[s] persons engaged in . . . commerce against unfair competition." Id. at § 1127. Section 1125(a) is "one of the few provisions that goes beyond trademark protection," Dastar Corp. v. Twentieth Century Fox Film Corp., 123 S. Ct. 2041, 2045 (2003), and states:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination

>           thereof, or any false designation of origin, false or
>           misleading description of fact, or false or misleading
>           representation of fact, which--
>
>                (A) is likely to cause confusion, or to
>           cause mistake, or to deceive as to the
>           affiliation, connection, or association of such
>           person with another person, or as to the origin,
>           sponsorship, or approval of his or her goods,
>           services, or commercial activities by another
>           person, or
>
>                (B)  in commercial advertising or
>           promotion, misrepresents the nature,
>           characteristics, qualities, or geographic origin
>           of his or her or another person's goods,
>           services, or commercial activities, shall be
>           liable in a civil action by any person who
>           believes that he or she is or is likely to be
>           damaged by such act.

15 U.S.C.A. § 1125.

Sierracin has asserted that defendant palmed off its product to Cessna as that of Sierracin's. In a case of "palming off," "similar marks on directly competing goods or services cause confusion over their origin. This situation is known as 'palming off,' because the defendant junior user misleads the public about the source of its goods or services, leading consumers to purchase the defendant's products in the belief that they are buying the plaintiff's." Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 630 (6th Cir. 2002).

Sierracin, however, does not assert that Cessna was led to believe that it was purchasing a Sierracin product that was in fact a LAI product. Rather, Sierracin suggests that since LAI did not submit a purchase order for the product that it was "counterfeit" and Cessna was then confused as to whether it was in compliance with the sole-source contract. The problem with Sierracin's position is that

-4-

it is not supported by facts or legal authority.  An indispensable element of a claim under the Lanham Act is the likelihood of confusion as to the source of goods in question.  L.G.B. Inc. v. Gitano Group, 769 F. Supp. 1243, 1249 (D.N.Y. 1991).  Clearly, there are no facts which support confusion by Cessna as to the source of the product.  LAI was the manufacturer and Sierracin provided the design.  The allegation that LAI may have failed to provide Sierracin with copies of purchase orders does not transform the source of the product.  The product, at all times, was manufactured with Sierracin's design.  The Lanham Act does not support a cause of action based on Sierracin's theory of confusion with contract compliance.  Sierracin's action, instead, is simply one for breach of contract.  Defendants' motion for summary judgment on Sierracin's Lanham Act claim is therefore granted.

### B.   Unfair Competition

Sierracin urges the court to deny defendant's motion for summary judgment on the basis that "[t]he due diligence investigation report makes clear LAI and Mr. Hart's desire to compete directly with Sierracin using this confidential and proprietary information as ammunition against Sierracin. By using confidential and proprietary pricing data, customer service data, and marketing data LAI to compete with Sierracin and Mr. Hart acted in bad faith."  (Doc. 144 at 12). While the use of proprietary information, i.e. trade secrets, can constitute a claim for unfair competition under Kansas law, Sierracin has not pleaded a claim of unfair competition based on the misuse of confidential information.  The theory of unfair competition set forth in the pretrial order does not include any issue of fact that defendants misused Sierracin's confidential business information.

-5-

Instead, the pretrial order simply states that "LAI used former key employees (president and marketing director) in bad faith and intentionally operated in such a way as to be unfair and detrimental to the former employer, Sierracin." (Pretrial Order at ¶6(a)).

Sierracin articulates its burden of proof under this theory by asserting it need only prove that "LAI, the competing enterprise, was intentionally operated for the purpose and in such a way as to be unfair and detrimental to the [sic] Sierracin, Hart's former employer." (Pretrial Order at ¶6(b)). Having never pleaded an unfair competition theory based on the misuse of confidential information, Sierracin cannot avoid summary judgment. Dodson Intern. Parts, Inc. v. Hiatt, 2003 WL 22327176, *13 (D. Kan. Sept. 25, 2003)(plaintiffs failed to plead a claim of unfair competition based on the misuse of confidential information when the pretrial order stated "the business transactions entered into between Defendants and the Altendorfs as officers and employees of Plaintiff were intentionally entered for the purpose and in such a way as to be unfair and detrimental to Plaintiff.") Defendants' motion for summary judgment on Sierracin's claim for unfair competition is granted.

### C. Civil Conspiracy

Defendants assert that Sierracin's civil conspiracy claim cannot survive summary judgment since Hart and Lee, as agents of LAI, cannot conspire with their employer. Sierracin has failed to respond. A "party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is 'appropriate' under Rule 56."

<u>Reed v. Bennett</u>, 312 F.3d 1190, 1195 (10th Cir. 2002).

It is well-settled under California law that where a corporate agent acts within the scope of his agency, the acts are attributable to the corporation, not the individual. <u>Black v. Bank of America N.T. & S.A.</u>, 35 Cal. Rptr.2d 725, 729 (Cal. Ct. App. 1995). Accordingly, "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." <u>Id.</u>; <u>Accuimage Diagnostics Corp v. Terarecon, Inc.</u>, 260 F. Supp.2d 941, 947 (N.D. Cal. 2003). While Sierracin could potentially survive summary judgment on this claim by producing evidence to establish that Hart and Lee were acting for their own individual advantage, <u>Black</u>, 35 Cal. Rptr.2d at 729, it has failed to do so.

### V.   CONCLUSION

Defendants' motion for summary judgment on Sierracin's claim for civil conspiracy is granted.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.

Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this 15th  day of December 2005, at Wichita, Kansas.

                                 s/ Monti Belot
                                 Monti L. Belot
                                 UNITED STATES DISTRICT JUDGE